UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TONY D. SUDDETH, ) | |
| ) | No. CV-08-0148-CI |
| Plaintiff, ) | |
| ) | ORDER DENYING PLAINTIFF'S |
| v. ) | MOTION FOR SUMMARY JUDGMENT |
| ) | AND GRANTING DEFENDANT'S |
| MICHAEL J. ASTRUE, ) | MOTION FOR SUMMARY JUDGMENT |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 17, 19.)  Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolfe represents Defendant.   The  parties  have  consented  to  proceed  before  a magistrate judge. (Ct. Rec. 8.)  After reviewing the administrative record  and  the  briefs  filed  by  the  parties,  the  court  **DENIES** Plaintiff's  Motion  for  Summary  Judgment  and  directs  entry  of judgment for the Defendant.

Plaintiff applied for disability insurance benefits (DIB) and Supplemental Security Income (SSI) in May 2006. (Tr. 138-39.)  He alleged  disability  due  to  back,  neck,  and  hip  pain,  and  a  jaw injury,  with  an  onset  date  of  December  31,  2001.   (Tr.  149.) Following  a  denial  of  benefits  at  the  initial  stage  and  on reconsideration, a hearing was held before Administrative Law Judge

1 (ALJ) Richard Say on July 26, 2007.  (Tr. 44-67.)  Plaintiff, who

2 was represented by counsel, and vocational expert Dan McKiney

3 testified.  On October 22, 2007, ALJ Say denied benefits; review was

4 denied by the Appeals Council after consideration of additional

5 evidence submitted by Plaintiff.[1]  (Tr. 4-7, 11-22, 32-42.)  This

6 appeal followed.  Jurisdiction is appropriate pursuant to 42 U.S.C.

7 § 405(g).

8                              **STANDARD OF REVIEW**

9     In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

10 court set out the standard of review:

11     The decision of the Commissioner may be reversed only if
       it is not supported by substantial evidence or if it is
12     based on legal error. *Tackett v. Apfel*, 180 F.3d 1094,
       1097 (9th Cir. 1999). Substantial evidence is defined as
13     being more than a mere scintilla, but less than a
       preponderance. *Id.* at 1098. Put another way, substantial
14     evidence is such relevant evidence as a reasonable mind
       might accept as adequate to support a conclusion.
15     *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the
       evidence is susceptible to more than one rational
16     interpretation, the court may not substitute its judgment
       for that of the Commissioner. *Tackett*, 180 F.3d at 1097;
17     *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595,
       599 (9th Cir. 1999).

18

19

20     [1]  The additional evidence includes a letter from Plaintiff's

21 representative and medical records dated August to December 2007,

22 March and May 2000, and January to March 2008.  (Tr. 7.)  These

23 records are part of the record on *de novo* review by this court.

24 *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Gomez v.*

25 *Chater*, 74 F.3d 967, 971 (9th Cir. 1996).  Remand for consideration

26 of new evidence by the ALJ is appropriate only if it is clear the

27 new evidence may change the ALJ's decision.  *Mayes v. Massanari*, 276

28 F.3d 453, 462 (9th Cir 2001).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1        The ALJ is responsible for determining credibility,
2   resolving conflicts in medical testimony, and resolving
    ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
3   Cir. 1995).  The ALJ's determinations of law are reviewed
    *de novo*, although deference is owed to a reasonable
4   construction of the applicable statutes. *McNatt v. Apfel*,
    201 F.3d 1084, 1087 (9th Cir. 2000).

5
6                        **SEQUENTIAL PROCESS**

7   Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

8   requirements necessary to establish disability:

9        Under the Social Security Act, individuals who are
    "under a disability" are eligible to receive benefits. 42
10  U.S.C. § 423(a)(1)(D). A "disability" is defined as "any
    medically determinable physical or mental impairment"
11  which prevents one from engaging "in any substantial
    gainful activity" and is expected to result in death or
12  last "for a continuous period of not less than 12 months."
    42 U.S.C. § 423(d)(1)(A). Such an impairment must result
13  from "anatomical, physiological, or psychological
    abnormalities which are demonstrable by medically
14  acceptable clinical and laboratory diagnostic techniques."
    42 U.S.C. § 423(d)(3). The Act also provides that a
15  claimant will be eligible for benefits only if his
    impairments "are of such severity that he is not only
16  unable to do his previous work but cannot, considering his
    age, education and work experience, engage in any other
17  kind of substantial gainful work which exists in the
    national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus,
18  the definition of disability consists of both medical and
    vocational components.

19       In evaluating whether a claimant suffers from a
    disability, an ALJ must apply a five-step sequential
20  inquiry addressing both components of the definition,
    until a question is answered affirmatively or negatively
21  in such a way that an ultimate determination can be made.
    20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The
22  claimant bears the burden of proving that [s]he is
    disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
23  1999).  This requires the presentation of "complete and
    detailed objective medical reports of h[is] condition from
24  licensed medical professionals." *Id*. (citing 20 C.F.R. §§
    404.1512(a)-(b), 404.1513(d)).

25
                         **STATEMENT OF FACTS**
26
    The facts of the case are set forth in detail in the transcript
27
    of proceedings, and are briefly summarized here.  Plaintiff was 39
28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1 at the time of the hearing.  (Tr. 48.)  He had an 11th grade

2 education, was not married, and lived alone in a house owned by his

3 parents. (*Id*.)  He testified he did his own household chores,

4 including cooking and laundry, but he did not drive or shop because

5 of lower extremity pain.  (Tr. 50-51.)  He stated he could lift a

6 gallon of milk, sit for 10 to 15 minutes, stand for 10 minutes, walk

7 slowly for 10 to 15 minutes and had trouble with his balance.  (Tr.

8 53.)   Plaintiff has past work experience as a metal cutter,

9 demolition worker, industrial truck driver/ fork lift operator,

10 metal finisher, hazardous material removal specialist, siding

11 installer and construction laborer.  (Tr. 61.)  He testified he was

12 no longer able to work due to fatigue and pain in his neck, feet and

13 legs.  (Tr. 56-58.)

**ADMINISTRATIVE DECISION**

15     The ALJ found Plaintiff was insured for DIB through December

16 31, 2006.  At step one, he found Plaintiff had not engaged in

17 substantial gainful activity.  (Tr. 34.)  At step two, he found

18 Plaintiff had the severe impairments of degenerative disk disease of

19 the lumbar spine and palmar fascia contracture in the right hand.

20 (Tr. 43.)  He found Plaintiff's diagnosed plantar fasciitis, neck

21 sprain, jaw injury, and impetigo were not severe.  (Tr. 35.)  At

22 step three, he found none of the impairments alone or in combination

23 equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart

24 P, Appendix 1 (Listings).  The ALJ found Plaintiff's subjective

25 complaints regarding the severity of his symptoms were not entirely

26 credible.  (Tr. 37-38.)  At step four, he determined Plaintiff had

27 the residual functional capacity (RFC) to perform light work with

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

several postural and manipulation restrictions, but he could not perform his past relevant work.   (Tr. 36, 40.)   Considering vocational expert testimony, the ALJ found Plaintiff could perform other light and sedentary jobs in the national economy.   The ALJ specifically identified jobs in the Packing and Filling Machine Operator and Product Inspector/Checker categories that Plaintiff could perform. (Tr. 41.)   He concluded Plaintiff was not "disabled" as defined by the Social Security Act through the date of the decision.   (*Id.*)

## ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff contends the ALJ erred when: (1) he found at step two that Plaintiff's diagnosed plantar fasciitis was not a severe impairment; (2) he discounted Plaintiff's testimony regarding the severity of his symptoms; and (3) he improperly relied on a non-examining medical opinion when assessing his RFC.   (Ct. Rec. 18 at 11-19.)

## DISCUSSION

**A.   Step Two: Severity of Plantar Fasciitis**

To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.   20 C.F.R. § 404.1508, 416.908.   The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.   *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

The Commissioner has passed regulations which guide dismissal of claims at step two.  Those regulations state an impairment may be found to be "non-severe" *only* when evidence establishes a "slight abnormality" that has "no more than a *minimal effect* on an individual's ability to work." *Corrao v. Shalala*, 20 F.3d 943, 949 (9ᵗʰ Cir. 1994)(*citing Social Security Ruling (SSR) 85-28*).  As explained in *SSR* 85-28:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

*SSR* 85-28.  The regulations advise the adjudicator that "[g]reat care should be exercised in applying the not severe impairment concept." *Id*.

In determining whether a claimant has a severe impairment the ALJ evaluates the credible medical evidence submitted and explains the weight given to the opinions of accepted medical sources in the record. *Corrao*, 20 F.3d at 950.  The regulations distinguish among the opinions of three types of accepted medical sources: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records.  20 C.F.R. §§ 404.1527, 416.927.  A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

1  weight than a non-examining reviewing or consulting physician's

2  opinion.  *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004);

3  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "As is the case

4  with the opinion of a treating physician, the Commissioner must

5  provide 'clear and convincing' reasons for rejecting the

6  uncontradicted opinion of an examining physician."  *Lester*, 81 F.3d

7  at 830 (citation omitted).  If the opinion is contradicted, it can

8  only be rejected for specific and legitimate reasons that are

9  supported by substantial evidence in the record.  *Andrews,* 53 F.3d

10 at 1043.  The testimony of a non-examining medical expert by itself

11 cannot be considered substantial evidence that supports the

12 rejection of an examining physician.  *Lester*, 81 F.3d at 831.

13 Further, a non-examining state agency physician's findings of fact

14 must be treated as expert opinion evidence of non-examining sources

15 by the ALJ, who can give weight to these opinions only insofar as

16 they are supported by evidence in the case record.  The ALJ cannot

17 ignore these opinions and must explain the weight given.  *SSR* 96-6p.

18      In addition to acceptable medical sources, the ALJ must

19 consider opinions from other sources, such as nurse practitioners

20 (ARNP) and certified physician assistants (PA-Cs).  20 C.F.R. §§

21 404.1513(d), 416.913(d).  Other source testimony can never establish

22 a diagnosis or disability absent corroborating competent medical

23 evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

24 More weight generally is given to the opinions of an accepted

25 medical source than that of an other source.  *Gomez*, 74 F.3d at 970-

26 71.  However, the ALJ is required to "consider observations by

27 [other] sources as to how an impairment affects a claimant's ability

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1  to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

2  Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an

3  ALJ is obligated to give reasons "germane" to "other source"

4  testimony before discounting it.  Further, if there is evidence of

5  an impairment, observations regarding functional limitations caused

6  by that impairment must be considered and may be given weight,

7  depending on the relevant facts, including the other source's

8  qualifications, how long the other source has worked with Plaintiff

9  and how consistent her opinions are with other evidence.  *See also*

10  *SSR* 06-03p.

11     Here, Plaintiff submitted treatment records from the Community

12  Health Association of Spokane (CHAS), and reports from examining

13  physicians.    Plaintiff claims he was diagnosed with plantar

14  fasciitis in May 2006 (Tr. 229); however, the cited diagnosis is

15  included in reports by Barbara Tritt, PA-C, an "other source." Under

16  the Regulations, her diagnosis alone cannot establish an impairment.

17  *Nguyen*, 100 F.3d at 1467.   In addition, Plaintiff references the

18  diagnosis by neurologist Robert Rutherford, M.D., of "probable

19  plantar fasciitis bilaterally" in August 2007. (Tr. 263.)   A

20  diagnosis of plantar fasciitis also is found in a July 2007 report

21  from Dr. Charles Brondos, examining neurologist.  (Tr. 279.)   The

22  ALJ thus properly found that Plaintiff was diagnosed with plantar

23  fasciitis, (Tr. 35), but the a finding of severity requires more.

24  The credible medical evidence must also show that the impairment (1)

25  causes functional limitations that have more than a minimal effect

26  on Plaintiff's ability to do work activities, and (2) last more than

27  12 months.   20 C.F.R. §§ 404.1509, 416.909; *SSR* 96-3p.

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

As found by the ALJ, Dr. Rutherford examination revealed Plaintiff's ankle and foot had full range of motion and little tenderness "when Plaintiff was distracted." (Tr. 35, 263.) The doctor also noted Plaintiff's "unusual and subjectively severe symptoms," and ordered a bone scan to rule out a bone abnormality. (Tr. 263.) The bone scan "suggested" plantar fasciitis and changes consisted with degenerative changes; hence, Dr. Rutherford's diagnosis of "probable" plantar fasciitis. (Tr. 264.) Other objective medical evidence, including 2008 chart notes and a neurology report submitted to the Appeals Council, indicates Plaintiff had decreased sensation in his feet, but minimal functional limitations were observed: *e.g.*, Plaintiff had a full range of motion in both feet, intact balance and heel/toe walking, no limp, normal gait and coordination; completely normal strength in upper and lower extremities, and normal limb tone. (Tr. 97-98, 101, 232, 285.) Extensive laboratory studies conducted in 2008, including an electrodiagnostic study of lower extremities, revealed no significant abnormalities. (Tr. 73-76.)

In January 2008, examining neurology specialist Dr. Stephen Carlson found Plaintiff's examination "fairly reassuring" and commented that Plaintiff's "complaints were overwhelming, but the exam findings are underwhelming." (Tr. 98.) Further, treatment of Plaintiff's foot condition appears to be limited to physical therapy, which Plaintiff refused to continue beyond three visits, in spite of some reported improvement and good rehabilitation potential. (Tr. 266-72.) The amount of treatment for an impairment is "an important indicator" of symptom severity. 20 C.F.R. §§

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

1  404.1529(c)(3), 416.929(c)(3).

2      As discussed above, credible medical evidence is evaluated at

3  step two to assess the effects of an impairment; subjective

4  complaints alone cannot establish severity.  *SSR* 85-28. The ALJ's

5  step two determination that the objective medical evidence related

6  to Plaintiff's plantar fasciitis diagnosis showed no more than a

7  minimal effect on functional abilities is well supported by the

8  entire record.   The ALJ did not err at step two.   Further,

9  Plaintiff's complaints of pain and limitations allegedly caused by

10  plantar fasciitis were properly considered in the ALJ's credibility

11  determination and at step four and step five, in combination with

12  severe impairment symptoms.  *SSR* 96-3p; *SSR* 96-7p; (Tr. 35, 37-41).

13  Thus, the alleged error, if any, at step two was non-prejudicial

14  and, therefore, harmless.  *Burch v. Barnhart*, 400 F.3d 676, 682 (9th

15  Cir. 2005).

16  **B.   Credibility**

17      Plaintiff argues the ALJ did not give specific reasons to

18  reject his testimony that his limited abilities to sit, stand, walk

19  and lift and carry rendered him totally disabled.  (Ct. Rec. 18 at

20  16.)   This argument is unpersuasive because the ALJ made extensive

21  legally sufficient findings in support of his credibility

22  determination.  (Tr.  38-39.)

23      It is well-settled that credibility determinations are the sole

24  province of the adjudicator.  *Richardson,* 402 U.S. at 400; *Thomas v.*

25  *Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d

26  597, 604 (9th Cir. 1989).   However, when an ALJ finds a claimant's

27  statements as to the severity of impairments, pain and limitations

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

are not credible, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Thomas*, 278 F.3d at 958-959*; Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).  Nonetheless,

> An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A). . . . This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce <u>some</u> pain; many medical conditions produce pain not severe enough to preclude gainful employment."

*Fair*, 885 F.2d at 603.   If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).   The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986).  Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant.  In addition to ordinary techniques of credibility evaluation, the ALJ may consider the following factors when weighing the claimant's credibility:   the claimant's reputation for truthfulness; inconsistencies either in his allegations of limitations or between

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

his statements and conduct; daily activities and work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Fair*, 885 F.2d 597 at n.5. The ALJ may also consider an unexplained failure to follow treatment recommendations and testimony by the claimant "that appears less than candid." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). If the ALJ's credibility finding is supported by substantial evidence in the record, "the court may not engage in second-guessing." *Thomas*, 278 F.3d at 959; *Fair*, 885 F.2d at 604.

Here, the ALJ noted Plaintiff's allegations that he could not work due to muscle constriction over his entire body and that he spends 95 percent of his day lying down. (Tr. 37.) Further, he specifically referenced Plaintiff's testimony that he could lift less than a gallon of milk, and sit, stand or walk for 10-15 minutes at a time. (Tr. 39.) Nonetheless, based on his interpretation of the evidence, the ALJ concluded that these assertions were not entirely credible. (Tr. 37.) Significantly, the ALJ found, and the record shows, that physical examinations and recorded observations by medical specialists consistently show Plaintiff had intact gait, balance and coordination, with no evidence of muscle atrophy in upper or lower extremities, indicating he was able to sit, stand and walk. (Tr. 38.) The ALJ specifically cited objective imaging results and treatment notes from examining medical sources and Plaintiff's primary care provider that indicated Plaintiff had the physical ability to perform light work. (Tr. 38; *see, e.g.*, Tr. 223, 229-32, 236-38, 287.) Although an adjudicator may not reject

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

1  a claimant's extreme symptom complaints solely on a lack of

2  objective medical evidence, the medical evidence is a relevant

3  factor to consider.  *SSR* 96-7p.  Further, the ALJ's reasoning that

4  medical evidence did not establish total disability is supported by

5  neurology reports and imaging results in evidence submitted to the

6  Appeals Council.  (Tr. 97-101.)

7      In addition to a lack of objective medical evidence, the ALJ

8  gave other "clear and convincing" reasons to discount Plaintiff's

9  testimony, including: observations by examining specialists and his

10  physical therapy provider that his symptoms were "unusual" and

11  unexplained by test results; the use of conservative treatment; and

12  Plaintiff's failure to follow through with treatment

13  recommendations;[2] Plaintiff's self-reported activities of daily

14  living that contradicted his claim of being bed-ridden 95 percent of

15  the day; and inconsistencies between treatment notes and Plaintiff's

16  testimony.  (Tr. 39, 263, 266.)  The ALJ reasonably found the

17  extremity of the symptoms described by Plaintiff at the hearing was

18  "implausible" and was not reflected in treatment notes.[3] (Tr. 38-39.)

19

20

21      [2]  Evidence of conservative treatment and failure to follow

22  through with recommended conservative treatment are legally

23  sufficient reasons to discount Plaintiff's statements regarding the

24  severity of an impairment.  *See Tommasetti*, 533 F.3d at 1039; *Parra*

25  *v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citation omitted).

26      [3]  The ALJ erroneously referenced Plaintiff's ability to sit

27  through the entire hearing as a reason to discredit his claim that

28  he could only sit for 10-15 minutes.  As noted in Ninth Circuit law,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

1    These specific reasons are sufficiently "clear and convincing."

2    Thomas, 278 F.3d at 958-59.   Further, the ALJ's interpretation of

3    the evidence is rationally supported by the entire record;

4    therefore, the court may not second guess the Commissioner's

5    credibility determination.   *Tackett*, 180 F.3d at 1097.

6    **C.    RFC Determination**

7         Plaintiff contends his impairments render him totally unable to

8    perform work activities.   (Ct. Rec. 18 at 156.)   He argues the ALJ

9    erroneously relied on the opinions of a non-examining physician in

10   his final RFC determination, which is as follows:

11        [C]laimant has the residual functional capacity to perform
          the full range of light work.   The clamant can lift 20
12        pounds occasionally and frequently lift or carry 10
          pounds.   The clamant can sit for six hours and stand or
13        walk for six hours in an eight-hour workday.   He can
          occasionally stoop, crouch, crawl, kneel, balance, or
14        climb.   He can occasionally use his right dominant thumb
          and hand for fingering.   The claimant is afflicted with
15        symptoms from various sources including mild to moderate
          chronic pain which is of sufficient severity to be
16        noticeable to him at all times, but he would be able to
          remain attentive and responsive in a work setting and
17        could carry out normal work assignments satisfactorily.
          The clamant takes medication for relief of his symptoms,
18

19   _____

20   *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984), it is error

21   to rely on the "squirm" test; thus, to the extent the credibility

22   findings reflect the ALJ's personal observation of Plaintiff during

23   the hearing, those findings are error.   However, such error may not

24   render the entire decision improper where, as here, there are other

25   legally sufficient reasons included in the credibility findings.

26   *See Morgan,* 169 F.3d at 600 *(citing Sellard v. Shalala*, 37 F.3d 1506

27   (9th Cir. 1994); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985).

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

> but the medications do not prevent him from functioning at
> the levels indicated, and he would remain reasonably alert
> to perform required functions presented by his work
> setting.  The clamant would need to change position about
> every 45-60 minutes to relieve symptoms.

(Tr. 36.)   In making these findings, the ALJ gave "significant weight" to the October 2006 RFC affirmed by agency reviewing physician, Norman Staley, M.D.  (Tr. 39, 250-59.) Plaintiff contends the ALJ improperly rejected the opinions of Dr. Brondos (examining physician) and PA-C Tritt in favor of Dr. Staley's opinions.  (Ct Rec. 18 at 17-18.)

The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31.  The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.   *Lester*, 81 F.3d at 831 (*citing Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).   Cases have upheld rejection of an examining or treating physician based in part on the testimony of a non-examining medical source; but those cases have also found reasons to reject the opinions of examining and treating physicians, independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831 (*citing Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results)).   Thus, case law requires substantial evidence (more than

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

1  a mere scintilla, but less than a preponderance), independent of the

2  non-examining physician opinion which supports the rejection of

3  contrary conclusions by examining or treating physicians.  *Andrews*,

4  53 F.3d at 1039.

5      Plaintiff was referred by his primary care provider to Dr.

6  Brondos in July 2007.  Dr. Brondos evaluated Plaintiff specifically

7  to rule out ALS, multiple sclerosis and neuropathy.  (Tr. 275, 279-

8  280.)  In his one and a half page narrative report he found "no

9  supersensitivity over the feet by examination.  Vibration is intact

10 at the ankle." (Tr. 280.) Examination also revealed normal

11 coordination and symmetric motor strength in upper and lower

12 extremities.  (*Id.*)  Further, in his form report, Dr. Brondos noted

13 all areas evaluated were "within normal limits."  (Tr. 276.)  He

14 identified "neuropathy" as the only limiting diagnosis, and gave it

15 a severity rating of "moderate." However, on the form report, he

16 opined Plaintiff's overall work level was "sedentary."  (Tr. 277.)

17 The ALJ gave the check-box form of Dr. Brondos's report little

18 weight, because it (1) was in an unexplained check-box format; (2)

19 was based on a single examination; (3) was based on self-report "in

20 a secondary gain context"; and (4) did not contain an explanation of

21 the basis for the conclusion.  (Tr. 40.)  These are specific and

22 legitimate reasons for rejecting a contradicted examining

23 physicians' opinions, and they are fully supported the record as

24 discussed above.  *See, e.g., Crane v. Shalala*, 76 F.3d 251, 253, (9th

25 Cir. 1996).  It is further noted on independent review that Dr.

26 Brondos's narrative summary of his brief physical examination are

27 consistent with other medical evidence in the record and, therefore,

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

1  were unrejected by the ALJ.    (Tr. 280.)

2       Regarding Ms. Tritt's opinion that Plaintiff is "severely

3  limited" found on a form report (Tr. 226), the ALJ fully discussed

4  the weight given her "other source" opinion.    20 C.F.R. §§

5  404.1513(d);  416.913(d).  (Tr.  40.)  He correctly noted the

6  Commissioner is required to consider observations by "other sources"

7  or lay witnesses regarding the effects of impairments on a

8  claimant's ability to work.  *Sprague*, 812 F.2d at 1232.  Moreover,

9  an ALJ is obligated to give reasons "germane" to a lay witness's

10 testimony before discounting it.  *Dodrill*, 12 F.3d at 919.  It is

11 appropriate to discount lay testimony if it conflicts with other

12 substantial medical evidence.  *Vincent v. Heckler*, 739 F.2d 1393,

13 1395 (9th Cir. 1984). The ALJ gave Ms. Tritt's evaluation form

14 findings little weight, noting they were (1) not supported by other

15 objective medical evidence in the record; (2) based on Plaintiff's

16 unreliable self-report of symptoms and limitations; and (3)

17 inconsistent with her own treatment notes.  (Tr. 40.)  These are

18 specific, germane reasons for discounting Ms. Tritt's conclusory

19 findings.    Further, excepting the self-reported and properly

20 discounted symptoms, Ms. Tritt's observations and findings on

21 examination recorded in treatment notes are reasonably consistent

22 with the Dr. Staley's RFC assessment, and the ALJ's final RFC

23 determination.  The ALJ properly evaluated the medical evidence and

24 his RFC determination is reasonably supported by the entire record

25 on review.  Accordingly,

26      **IT IS ORDERED**:

27      1.    Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

1 **DENIED.**

2        2.    Defendant's Motion for Summary Judgment dismissal **(Ct.**

3 **Rec. 19)** is **GRANTED.**

4        The District Court Executive is directed to file this Order and

5 provide a copy to counsel for Plaintiff and Defendant.   The file

6 shall be **CLOSED** and judgment entered for **Defendant.**

7        DATED May 19, 2009.

8

9                               S/ CYNTHIA IMBROGNO
                          UNITED STATES MAGISTRATE JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18